IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DEMOCRACY FORWARD FOUNDATION
1333 H Street, NW
Washington, DC  20005

*Plaintiff,*                                                      Case No.  17-cv-2678

vs.

OFFICE OF MANAGEMENT AND BUDGET,
725 17th Street, NW
Washington, DC 20503,

*Defendant.*

## COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff Democracy Forward Foundation brings this action under the Freedom of
Information Act, 5 U.S.C. § 552 ("FOIA"), against Defendant, Office of Management and
Budget ("OMB" or "agency"), to compel it to produce documents that would shed light on the
identities of those serving on the President's Regulatory Reform Task Forces and their
instrumental, but as-yet-unexplained, role in prosecuting the Administration's deregulatory
agenda.

### Jurisdiction and Venue

1.      This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B)
and 28 U.S.C. § 1331.

2.      Venue is proper under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

1

3.      Because Defendant has failed to comply with the applicable time limit provisions in FOIA, Plaintiff is deemed to have exhausted its administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

## Parties

4.      Plaintiff Democracy Forward Foundation is a not-for-profit organization incorporated under the laws of the District of Columbia and based in Washington, D.C.  Plaintiff works to promote transparency and accountability in government, in part, by educating the public on government actions and policies.

5.      Defendant OMB is a federal agency within the meaning of FOIA, 5 U.S.C. § 552(f)(1), that is headquartered in Washington, D.C., and has possession, custody, and control of records to which Plaintiff seeks access.

## Factual Allegations

*Regulatory Reform Task Forces and the Administration's Deregulatory Agenda*

6.      Within days of taking office, President Trump issued Executive Order 13771 on "Reducing Regulation and Controlling Regulatory Costs."  The so-called "2-out, 1-in" E.O. requires federal agencies to eliminate two existing regulations for every new rule issued, and places a budgetary cap on the total amount of additional regulatory costs an agency may impose in any given fiscal year.[1]

7.      On February 24, 2017, surrounded by a dozen CEOs,[2] President Trump issued Executive Order 13777 on "Enforcing the Regulatory Reform Agenda."  E.O. 13777 directs each

---

[1] *See* Press Release, The White House, Presidential Exec. Order on Reducing Regulation and Controlling Regulatory Costs (Jan. 30, 2017), https://www.whitehouse.gov/the-press-office/2017/01/30/presidential-executive-order-reducing-regulation-and-controlling.
[2] *See Today in Trump: February 24, 2017*, CBS News, Feb. 24, 2017, https://www.cbsnews.com/news/latest-trump-news-today-february-24-2017/.

agency to designate a "Regulatory Reform Officer" to oversee implementation of the "2-out, 1-in" E.O. and to convene a "Regulatory Reform Task Force" to "evaluate existing regulations … and make recommendations to the agency head regarding their repeal, replacement, or modification," including by identifying "outdated, unnecessary, or ineffective" rules for repeal, consistent with the "2-out, 1-in" E.O.[3]

8.      E.O. 13777 further directed each Task Force to provide a progress report within 90 days regarding their efforts to "identify[] regulations for repeal, replacement, or modification" to be followed by subsequent progress reports thereafter.[4]

9.      Upon signing E.O. 13777, President Trump tweeted that the Task Forces "will help scrap job-killing regulations on American businesses."[5]  And that same day he vowed "to put the regulation industry out of work and out of business."[6]

10.      The Task Forces have been hard at work ever since.

11.      Neomi Rao, Administrator of Defendant's Office of Information and Regulatory Affairs, reported in October 2017 that "[r]egulatory reform officers and task forces in every agency are working on systematic efforts to evaluate and reduce regulatory burdens."[7]

12.      After requesting private briefings with 24 agencies and receiving an unknown number of them, the House Committee on Oversight and Government Reform likewise reported

---

[3] *See* Press Release, The White House, Presidential Exec. Order on Enforcing the Regulatory Reform Agenda (Feb. 24, 2017), https://www.whitehouse.gov/the-press-office/2017/02/24/presidential-executive-order-enforcing-regulatory-reform-agenda.
[4] *Id.*
[5] President Trump (@POTUS), Twitter (Feb. 24, 2017, 2:46PM), https://twitter.com/potus/status/8352142714 53806592?lang=en.
[6] *See* Press Release, The White House, Remarks by President Trump at the Conservative Political Action Conference (Feb. 24, 2017), https://www.whitehouse.gov/the-press-office/2017/02/24/remarks-president-trump-conservative-political-action-conference.
[7] *See* Neomi Rao, Adm'r, Office of Info. and Regulatory Affairs, Keynote Address at the Heritage Foundation: The Administrative State and the Structure of the Constitution (Oct. 4, 2017), http://www.heritage.org/the-constitution/event/the-administrative-state-and-the-structure-the-constitution.

that the Task Forces are "accomplishing substantial progress in their regulatory cleanup efforts and are seeing unprecedented reduction in the federal regulatory footprint."[8]

13.     By December 31, 2017, the Department of Commerce has directed that each Task Force submit an "Action Plan" to the President containing "specific actions" that could be taken to reduce the "burden" purportedly caused by a host of environmental, consumer protection, workplace, health, and safety regulations identified as "Priority Areas for Reform" in the new year.[9]

*Task Forces Have Operated in Secret; Many Have Deep Ties to Special Interests*

14.     A touchstone of U.S. administrative law is the transparency of the regulatory process, as enshrined in the Administrative Procedure Act and the Federal Advisory Committee Act, among other public law statutes.

15.     These statutes require, among other things, that rule changes be undertaken in an open manner, following the opportunity for notice and comment by all interested parties, and that certain agency meetings and materials be made public.

16.     To date, however, much of the work of the Task Forces has been conducted behind closed doors, and in circumstances calculated to obscure the industry and other special interests that are influencing the deregulatory process.

17.     As House Republicans on the Oversight and Government Reform and Judiciary Committees noted in a joint September 2017 letter to the Department of Defense:  "[S]ome

---

[8] H. Comm. on Oversight and Gov't Reform, *Regulatory Reform Task Forces Check-In,* https://oversight.house.gov/hearing/regulatory-reform-task-forces-check/ (last visited Dec. 11, 2017).
[9] U.S. Dep't of Commerce, *Streamlining Permitting and Reducing Regulatory Burdens for Domestic Manufacturing,* 48 (Oct. 6, 2017), https://www.commerce.gov/sites/commerce.gov/files/streamlining_permitting_and_reducing_regulatory_burdens_for_domestic_manufacturing.pdf.

agencies have shared little to no information about their Task Forces with Congress or the

public."[10]  Indeed, many agencies have not disclosed the full membership of their Task Forces.

Where the names of participants have become known, news outlets have reported that the Task

Forces are populated with individuals tied to the very industries that stand to profit from the

deregulatory actions the Task Forces are charged with recommending.  For example:

- *Department of Agriculture:* Rebeckah Adcock, the leader of the USDA's Task Force who was previously employed by a pesticide industry main trade group, CropLife America, has reportedly met with lobbyists from her prior employer despite signing an ethics agreement agreeing to avoid those issues.[11]

- *Department of Education:* Robert Eitel, a member of the Education Task Force, was formerly a top lawyer for Bridgepoint Education, a for-profit college company reportedly facing multiple government investigations.[12]

- *U.S. Environmental Protection Agency:*  Samantha Dravis, the leader of EPA's Task Force, was a top official at a political group funded by the energy industry that has facilitated lawsuits to overturn federal environmental regulations.  While at EPA, she reportedly has met with Chevron Corp. executives "to discuss regulatory reform."[13]

- *Department of Transportation:* Daniel Elwell, a former member of the Transportation Regulatory Reform Task Force, had been a lobbyist for American Airlines, and an executive with Aerospace Industries Association, a trade group representing aerospace and defense companies, and Airlines for America, a trade association for the largest airlines that had opposed a now-suspended rulemaking that

---

[10] Letter from Trey Gowdy, Chairman, H. Comm. on Oversight and Gov't Reform, et al., to James N. Mattis, Sec'y, U.S. Dep't. of Defense (Sept. 6, 2017), https://oversight.house.gov/wp-content/uploads/2017/10/2017-09-06-OGR-JUD-to-Mattis-DOD-Regulatory-Task-Force-Briefing-by-9-2....pdf.

[11] *See* Robert Faturechi & Danielle Ivory, *A Wide-Open Door for Pesticide Lobbyists at the Agriculture Department,* ProPublica & N.Y. Times, Nov. 13, 2017, https://www.nytimes.com/2017/04/26/us/politics/trump-education-policy-review.html.

[12] *See* Erica L. Green, *Trump Orders Review of Education Policies to Strengthen Local Control,* N.Y. Times, Apr. 26, 2017, https://www.nytimes.com/2017/04/26/us/politics/trump-education-policy-review.html; Danielle Ivory, et al., *The Business Links of Those Leading Trump's Rollbacks*, N.Y. Times, Nov. 13, 2017, https://www.nytimes.com/interactive/2017/07/11/business/conflicts-trump-regulation-rollback-team.html.

[13] *See* Maxine Joselow, *Mum's the Word About EPA's Rule-Cutting Task Force*, E&E News, Oct. 23, 2017, https://www.eenews.net/stories/1060064353; Danielle Ivory & Robert Faturechi, *The Deep Industry Ties of Trump's Deregulation Teams*, N.Y. Times, July 11, 2017, https://www.nytimes.com/2017/07/11/business/the-deep-industry-ties-of-trumps-deregulation-teams.html.

would have required passenger fee disclosure.  Elwell has been named the Deputy Administrator of the Federal Aviation Administration.[14]

18.     The activities of the Task Forces likewise remain shrouded in secrecy.  With notable exceptions, the periodic progress reports required by E.O. 13777 have not been made public; nor have agencies been consistent in giving out details concerning the rules being targeted for rollback by the Task Forces, and who is being consulted in this process.[15]

19.     Consequently, the Center for Progressive Reform recently observed in testimony before the House Committee on Oversight and Government Reform Subcommittee on Government Operations and Subcommittee on Health Care, Benefits, and Administrative Rules that "the operations of these Task Forces are perhaps the least transparent and involve the least meaningful public participation of any component of the U.S. regulatory system."[16]

20.     Where questions have arisen regarding the activities of the Task Forces, the White House has referred reporters to Defendant.[17]

21.     As described below, Defendant has not produced any documents in response to Plaintiff's request for information pertaining to the identities, activities, and operations of the Task Forces.

---

[14] *See* Danielle Ivory & Robert Faturechi, *Secrecy and Suspicion Surround Trump's Deregulation Teams*, N.Y. Times, Aug. 7, 2017, https://www.nytimes.com/2017/08/07/business/trump-deregulation-teams-transportation-department.html?mtrref=undefined.

[15] *See, e.g.*, Ivory & Faturechi, *The Deep Industry Ties of Trump's Deregulation Teams*, N.Y. Times, July 11, 2017; Joselow, *Mum's the Word About EPA's Rule-Cutting Task Force*, E&E News; Madi Alexander & Cheryl Bolen, *EPA, Energy Among Few Agencies Complying With Regulatory Order*, Bloomberg Bureau of Nat'l Affairs, May 26, 2017, https://www.bna.com/epa-energy-among-n73014451569/.

[16] *Regulatory Reform Task Forces Check-In, J. Hearing Before the Subcomm. on Gov't Operations & Subcomm. on Health Care, Benefits, and Admin. Rules of the H. Comm. On Oversight and Gov't Reform*, 115th Cong. 12 (2017) (statement of James Goodwin, Senior Policy Analyst, Ctr. for Progressive Reform), http://docs.house.gov/meetings/GO/GO24/20171024/106529/HHRG-115-GO24-Wstate-GoodwinJ-20171024.pdf.

[17] *See* Ivory & Faturechi, *The Deep Industry Ties of Trump's Deregulation Teams*, N.Y. Times, July 11, 2017.

*Plaintiff's FOIA Request to OMB*

22.    On November 2, 2017, Plaintiff submitted a FOIA request to OMB, seeking access to the following records for the time period of January 20, 2017 to the date the search is conducted:

- Any and all records of and correspondence detailing the names, titles, and previous affiliation of every member serving on or participating in each RRTF or joint Regulatory Reform Task Force required to be established by EO 13777. This request is inclusive of government employees (including the agency officials referred to in Sec. 3 of EO 13777), non-government private citizens, and special government employees.

- Any and all records detailing the names of any agency contractors or employees providing support to each RRTF or joint Regulatory Reform Task Force required to be established by EO 13777.

- Any and all records and communications sent between OMB, other component offices of the EOP, and/or other federal agencies related to each RRTF or joint Regulatory Reform Task Force required to be established by EO 13777, including concerning compliance with the Federal Advisory Committee Act.

- All records and correspondence detailing ethics waivers issued to members of or other participants in each RRTF or joint Regulatory Reform Task Force required to be established by EO 13777. This request is inclusive of government employees (including the agency officials referred to in Sec. 3 of EO 13777), non-government private citizens, and special government employees.

7

- All records and correspondence detailing recusals by members of each RRTF or joint Regulatory Reform Task Force required to be established by EO 13777. This request is inclusive of government employees (including the agency officials referred to in Sec. 3 of EO 13777), non-government private citizens, and special government employees.

- Any and all records of or communications relating to meetings of any RRTF or joint Regulatory Reform Task Force that pertain to an agency's compliance with the requirements outlined in EO 13777 which: (a) Were organized or attended by employees of OMB or other component offices of the EOP; and/or, (b) Were organized or attended by employees or private citizens using non .gov email addresses; and/or, (c) Where the subject was the development of recommendations for an agency's compliance with guidance issued on September 7, 2017 by OIRA Administrator Neomi Rao titled "FY 2018 Regulatory Cost Allowances"; and/or, (d) Where the subject was the development of recommendations for an agency's compliance with guidance issued on August 18, 2017 by OIRA Administrator Neomi Rao titled "Data Call for the Fall 2017 Regulatory Plan and Unified Agenda of Federal Regulatory and Deregulatory Actions."

A copy of the November 2, 2017 request is attached hereto as Exhibit A and incorporated herein ("November 2 FOIA Request").

23.    The November 2 FOIA Request additionally sought access to:

- All records that constitute any appointment calendar maintained by OIRA Administrator Neomi Rao or on Administrator Rao's behalf, from the date she

began serving as an OMB employee or advising the government on regulatory matters to the date the search is conducted.

- All records that constitute any appointment calendar maintained by or on behalf of the following individuals which pertain to any aspect of the development and implementation of EO 13777, EO 13771, or the aforementioned Rao memoranda of August 18, 2017 and September 7, 2017:  (a)  Jeffrey M. Harris and Rosario Palmieri, from the date each began serving as an OMB employee to the date the search is conducted; (b) Anthony Campau from January 20, 2017 to the date the search is conducted; and, (c) Dominic Mancini, from January 20, 2017 to the date the search is conducted.

24.     The November 2 FOIA Request further sought a waiver of all fees associated with the request.

25.     On November 7, 2017, Defendant confirmed receipt of the November 2 FOIA Request, assigned it a tracking number of 2018-044, and noted that the request had been received by OMB's FOIA office the previous day.  A copy of the November 7, 2017 confirmation of receipt is attached hereto as Exhibit B and incorporated herein.

26.     Notwithstanding the statutory obligation to make a determination on Plaintiff's request within 20 working days, Defendant has made no determination on Plaintiff's request, nor has the agency produced any materials in response to that request.

27.     Through Defendant's failure to respond within the statutory time limit, Plaintiff has constructively exhausted its administrative remedies and seeks immediate judicial review.

**Claim for Relief**

**Count One (Violation of FOIA, 5 U.S.C. § 552)**

28.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

29.     By failing to respond to Plaintiff's request within the statutorily prescribed time limit, Defendant has violated its duties under 5 U.S.C.§ 552, including but not limited to the duties to conduct a reasonable search for responsive records, to take reasonable steps to release all nonexempt information, and to not withhold responsive records.

WHEREFORE, Plaintiff prays that this Court:

1.     Order Defendant to conduct a search for any and all responsive records to Plaintiff's FOIA request using search methods reasonably likely to lead to discovery of all responsive records;

2.     Order Defendant to produce, by a date certain, any and all non-exempt responsive records and a *Vaughn* index of any responsive records withheld under a claim of exemption;

3.     Enjoin Defendant from continuing to withhold any and all non-exempt responsive records;

4.     Order Defendant to grant in full Plaintiff's request for a fee waiver;

5.     Award Plaintiff its costs, attorneys' fees, and other disbursements for this action; and

6.     Grant any other relief this Court deems appropriate.

Dated: December 14, 2017

Respectfully submitted,

/s/ Javier M. Guzman
Javier M. Guzman
(D.C. Bar No. 462679)
Josephine Morse* *pro hac vice
forthcoming*
Democracy Forward Foundation
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
jguzman@democracyforward.org
jmorse@democracyforward.org

*Admitted in New York; practicing
 under the supervision of members
 of the D.C. Bar while D.C. Bar
 application is pending.